UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ELIZABETH HELMINSKI**,

    Plaintiff,

v.

**GENTEX CORPORATION,**
**BRIAN BRACKENBERRY**,
personally and individually,

    Defendants.

File No.

Hon.

## COMPLAINT AND JURY DEMAND

Plaintiff, Elizabeth Helminski by and through her attorneys, Pinsky, Smith, Fayette & Kennedy, LLP, hereby represents:

### A. NATURE OF PROCEEDINGS

1. This is an action under Title VII of the Civil Rights Act of 1964, and the Elliot Larsen Civil Rights Act for Discrimination based on gender and retaliation, to correct unlawful employment practices on the basis of gender, and to provide appropriate relief to Plaintiff.

### B. JURISDICTION

2. Jurisdiction of this action is based on 42 U.S.C. §2000e, et. seq. The employment practices alleged to be unlawful were and may now continue being

committed with the jurisdiction of the United States District Court for the Western District of Michigan.

3. Venue is proper within this judicial district under 28 U.S.C. §1391(b) and 28 U.S.C. §1392(a).

4. All conditions precedent to jurisdiction of Section 706 of the Title VII, 42 U.S.C. §2000(e-5)(f)(3) have occurred and been complied with, to wit:

> (a) Charges of employment discrimination on the basis of gender and retaliation filed with the Equal Opportunity Employment Commission ("EEOC") and the Michigan.
>
> (b) Department of Civil Rights ("MDCR) within 300 days of the commission of the unlawful employment practices alleged herein;
>
> (c) A notification of Right to Sue was received from the EEOC on or about March 9, 2021 regarding Plaintiff's claim (attached as Exhibit A); and
>
> (d) This Complaint has been filed within the 90 days of receipt of the notification of the Right to Sue on Plaintiff's Claim.

### C. PARTIES

5. Plaintiff is a resident of Kent County, Michigan and the Western District of Michigan.

6. At all relevant times, Defendant Gentex, a corporation doing business in the State of Michigan and the City of Grand Rapids and has continuously had at least fifteen employees.

7. Defendant Brackenberry was Plaintiff's supervisor for all relevant time periods and is a resident of the Western District of Michigan.

8. At all relevant times, Defendant Gentex and the individual Defendant have continuously been employers engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §2000e-(b), (g) and (h).

### D. CAUSE OF ACTION

#### Statement of Claims

9. Plaintiff incorporates Paragraphs 1 - 8 as though set forth herein.

10. In September 2019, Plaintiff became employed by Defendants as a Senior Project Engineer. Plaintiff had a very successful work history and significant leadership skills that were recognized throughout her career.

11. The Senior Product Engineer position worked with engineers and other employees, mostly male, to do her job.

12. During her orientation one-on-one meetings with Defendant Brackenbury in January he repeatedly referred to the all-male leadership team as being "like fraternity brothers." There were very few female employees in leadership positions with Defendant Gentex.

13. It was clear in the first couple months of employment that in addition to the males on the leadership team, there was generally a pro-male "bro culture" in the working environment in many departments.

14. In either March or April of 2019, in a regularly scheduled one-on-one meeting with Defendant Brackenberry, they discussed her working relationships with the (mostly male) engineer teams. Brackenberry suggested that she pretend that she doesn't understand something so she can ask the engineers to explain the concept to her to make them feel better about working with her. Plaintiff responded that she was not comfortable in communicating in that way.

15. On July 16, 2019, Plaintiff was in a conversation with a male coworker who was the Director of Software, Chris Adamski. Plaintiff learned that Adamski was on the Diversity Council and got into a conversation about Diversity Council initiatives. Adamski stated that he did not believe in unconscious bias in hiring. Plaintiff was surprised and offered to share the research and documentation on the subject with him. Adamski flatly stated that the research or documentation "was flawed" and there was no such thing as "unconscious bias" and that he had no desire to look into it anymore.

16. In August of 2019, Plaintiff needed to discuss a confidential and internal project with Tom Wright. After they entered the conference room to discuss the confidential matter, Mr. Wright refused to shut the door so people could see into the room. When Plaintiff mentioned this odd refusal by Mr. Wright with a male co-worker he stated that it was likely because Mr. Wright had declared to other employees that he "lived biblically" and because of that would not be alone with a woman to whom he was not married. No males were subject to Mr. Wright's "only open door" policy.

17. On September 13, 2019, Plaintiff met with Defendant Brackenberry for her mid-year review. Brackenberry mentioned improving relationships with her co-workers by again suggesting that she pretend she doesn't understand something so she can ask someone to explain it to her. He also told her to focus less on results, and more on building relationships. He stated that he had peer feedback that Plaintiff was "pushing way too hard" on diversity initiatives. The one issue Plaintiff pushed was having free feminine hygiene products in the women's restrooms. Brackenberry also suggested that Plaintiff might act "more humble." Due to these statements, Plaintiff expressed that she had concerns about her continuing employment with the company. Brackenberry expressed that he wanted her to stay at Defendant Gentex.

18. During a three-day International Sales Meeting from September 17-19, 2019, there were many examples exhibiting a male dominated, fraternity brother culture at Defendant Gentex. The male leadership team and presenters "roasted" each other loudly and in front of the general meeting; male employees making jokes at Plaintiff's expense. This included one sales employee, a Mr. DuBridge as he told her later, pose as a hotel worker and approached her to talk to her and other male co-workers coming up to her pointing to one employee who they said wanted to know if she was single and wanted to meet her. When she looked where they were pointing. A table of men, including one of her regular co-workers, burst into laughter at such juvenile behavior.

19.     During the same meeting on the afternoon of 9/19/19, the leadership team was instructed to brainstorm on items that should be continued for future meetings and those things that should cease.  Plaintiff hesitated to bring up her thoughts but was encouraged to do so by a small breakout group. She then brought up the "bro culture" she and other females felt and the exclusionary treatment of females in the joking and otherwise at the conference.[1]  The comment was clearly not well received by some in the group and she was told not to share this with the bigger group after the break-out session.  Only after the program, did one of the people at the table come up to Plaintiff to tell her that they had experienced similar treatment. Another person suggested for Plaintiff to tell her manager.

20.     After returning from the conference, Plaintiff met with Defendant Brackenberry. Plaintiff told him she was not comfortable with pretending not to understand something and ask for someone to explain it to her.  She told him that her process had always been that if there was subject matter or issues with which she was not familiar, she would normally research the issue, then ask her co-workers for additional information as needed.

21.     Defendant Brackenberry again suggested that she have some questions, and to ask a co-worker to explain it to her, in front of others, so the person who knows the information and could explain it to her, and it would feel

---

[1] In a *New York Magazine* article in September 2013, Ann Friedman wrote that the term "bro culture" has become a 'shorthand for the sort of privileged ignorance that thrives in groups dominated by wealthy, white, straight men.'  She stated further that the term had been adopted by the media to refer to a 'misogynist culture within an organization or community.'

6

good about themselves. (Essentially, Defendant Brackenberry man-splained to Plaintiff how to she could summon man-splaining in front of an audience).

22. Plaintiff moved on in the meeting and told him about the concerns she shared with her breakout group during the meeting about the "bro culture" that exists heavily at Defendant Gentex. Defendant Brackenberry first asked if she meant the sort of jokes that Mr. DuBridge played on her, to which she responded that it was one example. He agreed there was a "frat boy" culture there. The two discussed how she should handle this issue, and after Defendant Brackenberry suggested it, Plaintiff agreed she would speak with the Vice-president of Diversity, Joe Matthews.

23. Soon after the meeting, Plaintiff scheduled a meeting time with Mr. Matthews in the beginning of October to discuss her complaints of discriminatory treatment based on gender at Gentex.

24. On September 27, Defendant Brackenberry contacted Plaintiff and asked if she had spoken to or met with Mr. Matthews yet. Plaintiff responded that she had not but that they had a meeting on the calendar for early October. Three days later, on September 30, Plaintiff was fired.

## COUNT I

### GENDER DISCRIMINATION AND RETALIATION UNDER TITLE VII

25. Plaintiff incorporates paragraphs 1 through 23 as if set forth herein.

26. At all times during her employment with Defendants Plaintiff performed her duties in an entirely satisfactory manner.

27. Defendants, by its conduct as aforesaid, violated 42 U.S.C. 2000(e(1-2) in that they discriminated against Plaintiff because of Plaintiffs gender.

28. Plaintiff, a female, was treated differently than similarly situated males were by Defendants.

29. The practices complained of above were intentional and designed to deprive Plaintiff of equal employment opportunities.

30. Plaintiff was treated differently than similarly situated male employees by Defendants.

31. Plaintiff was harassed and ultimately terminated due to her gender and for protected conduct regarding gender discrimination complaints.

32. The practices complained of above were intentional and designed to deprive Plaintiff of equal employment opportunities.

33. The unlawful employment practices complained of above were committed with malice or with reckless indifference to the federally protected rights of Plaintiff. As a result of the foregoing, Plaintiff lost earnings and benefits and suffered mental anguish, and emotional distress for which Defendants are liable.

## COUNT II

### GENDER DISCRIMINATION AND RETALIATION UNDER MICHIGAN ELLIOT LARSEN CIVIL RIGHTS ACT

34. Plaintiff incorporates paragraphs 1 through 34 as though set forth herein.

35. Defendants by their conduct as aforesaid, violated Michigan Elliot Larson Civil Rights Act, specifically MCLA 37.2013 and 37.2202, in that they discriminated against Plaintiff because of Plaintiffs gender. Such discrimination

was willful in that she was harassed and ultimately terminated from her employment.

36.  Defendants further retaliated against Plaintiff after she complained to the company regarding the discrimination against her.

37.  Plaintiff seeks legal and equitable relief regarding deprivation of certain rights as secured by Michigan Elliot Larson Civil Rights Act of 1976, as amended; specifically, MCLA 37.2103, 37.2202, and 37.2701.

38.  As a result of the foregoing, Plaintiffs lost earnings and benefits and suffered mental anguish and emotional distress for which Defendant is liable.

## RELIEF

WHEREFORE, Plaintiff request:

(a)  Award to Plaintiff back pay, front pay, and lost benefits with prejudgment interest;

(b)  Award to Plaintiff compensatory damages for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial;

(c)  Award to Plaintiff punitive damages for Defendants' malice or reckless indifference to Plaintiffs federally protected rights described above, in amounts to be determined at trial;

(d)  Award to Plaintiff her costs, disbursements, and reasonable attorney fees; and

(e)  Award to Plaintiff such other relief as may be just and equitable.

                                    PINSKY, SMITH, FAYETTE & KENNEDY, LLP
                                    Attorneys for Plaintiff

Dated:  April 22, 2021        By  */s/ Katherine Smith Kennedy*
                                      Katherine Smith Kennedy (P-54881)
                                      146 Monroe Center St NW, Suite 805
                                      Grand Rapids, MI  49503
                                      (616) 451-8496

## JURY DEMAND

NOW COMES Plaintiff, by and through his attorneys, Pinsky, Smith, Fayette & Kennedy, LLP and hereby demands a trial by jury of the entitled matter.

                                  PINSKY, SMITH, FAYETTE & KENNEDY, LLP
                                  Attorneys for Plaintiff

Dated:  April 22, 2021        By  */s/ Katherine Smith Kennedy*
                                      Katherine Smith Kennedy (P-54881)
                                      146 Monroe Center St NW, Suite 805
                                      Grand Rapids, MI  49503
                                      (616) 451-8496