UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH HELMINSKI,

    Plaintiff,

v

GENTEX CORPORATION, BRIAN BRACKENBURY, personally and individually,

    Defendants.

Case No. 1:21-cv-000340

HON. JANET T. NEFF

---

| | |
|---|---|
| Katherine Smith Kennedy (P54881)<br>PINSKY, SMITH, FAYETTE & KENNEDY<br>146 Monroe Ave., NW, Ste. 805<br>Grand Rapids, Michigan 49503<br>616.451.8496<br>kskennedy@psfklaw.com<br>*Attorneys for Plaintiff* | Amanda M. Fielder (P70180)<br>Allyson R. Terpsma (P78553)<br>WARNER NORCROSS + JUDD LLP<br>150 Ottawa Ave., NW, Ste. 1500<br>Grand Rapids, Michigan 49503<br>616.752.2404<br>afielder@wnj.com<br>aterpsma@wnj.com<br>*Attorneys for Defendant Gentex Corporation*<br><br>Mary L. Tabin (P58910)<br>Matthew M. O'Rourke (P79019)<br>MILLER JOHNSON PLC<br>45 Ottawa Ave., SW, Ste. 1100<br>Grand Rapids, MI 49501-0306<br>616.831.1753<br>tabinm@millerjohnson.com<br>orourkem@millerjohnson.com<br>*Attorneys for Defendant Brian Brackenbury* |

---

# BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ............................................................................................................... 1
BACKGROUND ................................................................................................................. 1
ARGUMENT ...................................................................................................................... 4
    I.    Helminski's Agreement To Arbitrate The Claims Asserted In This Lawsuit Should Be Enforced ................................................................... 5
    II.    Defendants Have Not Waived Their Arbitration Rights ......................... 9
CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Boykin v. Fam. Dollar Stores of Michigan, LLC*,
    3 F.4th 832 (6th Cir. 2021) ...................................................................................3, 4

*Brown v. ITT Consumer Fin. Corp.*,
    211 F.3d 1217 (11th Cir. 2000) ..................................................................................9

*EEOC v. Frank's Nursery & Crafts, Inc.*,
    177 F.3d 448 (6th Cir. 1999) ......................................................................................8

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ...................................................................................................4

*Elzemeyer v. MJM Co.*,
    No. 12-10718, 2012 WL 1715245 (E.D. Mich. May 15, 2012) ................................9

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ...................................................................................................4

*Gordon v. Dadante*,
    294 Fed. Appx. 235 (6th Cir. 2008) ...........................................................................9

*Healthcare Mgmt. Sys., Inc. v. Syntel Ltd.*,
    2013 WL 3834043 (M.D. Tenn. 2013) ......................................................................9

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) .....................................................................................................1

*Hurley v. Deutsche Bank Trust Co. Ams.*,
    610 F.3d 334 (6th Cir. 2010) ......................................................................................8

*Javitch v. First Union Sec., Inc.*,
    315 F.3d 619 (6th Cir. 2003) ......................................................................................4

*Marie v. Allied Home Mortgage Corp.*,
    402 F.3d 1 (1st Cir. 2005) ......................................................................................8, 9

*McNamara v. Yellow Transp., Inc.*,
    570 F.3d 950 (8th Cir. 2009) ......................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .......................................................................................................8

 Page(s)

*Powell v. Sparrow Hospital*,
   No. 1:10-CV-206, 2010 WL 2901875 (W.D. Mich. July 23, 2010) ........................................ 5

*Shy v. Navistar Int'l Corp*,
   781 F.3d 820 (6th Cir. 2015) ................................................................................................. 9

*Spencer v. XPO Logistics*,
   No. 17-14084, 2018 WL 6830349 (E.D. Mich. Dec. 28, 2018) .............................................. 8

*Tillman v. Macy's, Inc.*,
   735 F.3d 453 (6th Cir. 2013) ................................................................................................. 6

**State Cases**

*Foxworth v. Radio One, Inc.*,
   No. 240131, 2003 WL 22244073 (Mich. Ct. App. Sept. 30, 2003) ........................................ 5

*Guelff v. Mercy Health Servs.*,
   No. 200040, 1999 WL 33444156 (Mich. Ct. App. May 25, 1999) ................................. 5, 6, 7

*Heurtebise v. Reliable Bus. Computers*,
   550 N.W.2d 243 (Mich. 1996) ............................................................................................... 4

*Hicks v. EPI Printers, Inc.*,
   702 N.W.2d 883 (Mich. Ct. App. 2005) ....................................................................... 4, 5, 6, 7

**Federal Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ................................................................................. 1

**Rules**

Fed. R. Civ. P. 7.1 ..................................................................................................................... 1

Fed. R. Civ. P. 12 ...................................................................................................................... 1

Fed. R. Civ. P. 12(d) ................................................................................................................. 4

Fed. R. Civ. P. 56 ............................................................................................................. 1, 3, 4

## INTRODUCTION

This is an employment case in which Plaintiff Elizabeth Helminski ("**Helminski**") has asserted discrimination and retaliation claims against her former employer, Defendant Gentex Corporation ("**Gentex**") under Title VII and the Elliott-Larsen Civil Rights Act ("**ELCRA**"), and against her former supervisor, Defendant Brian Brackenbury ("**Brackenbury**"), under the ELCRA. Upon starting her employment with Gentex, Helminski signed a written acknowledgment of Gentex's employee handbook and alternative dispute resolution policy, which documents manifested the parties' clear intention to arbitrate the gender discrimination and retaliation claims asserted in this lawsuit. As such, Defendants have filed their Motion to Compel Arbitration and Dismiss Plaintiff's Complaint ("**Motion**") to respectfully request that this Court compel arbitration and dismiss this case pursuant to the Federal Arbitration Act ("**FAA**"), 9 U.S.C. §§ 1-16, and Federal Rules of Civil Procedure 12 and 56.[1]

## BACKGROUND

Gentex hired Helminski as a Senior Product Design Engineer, reporting to Brackenbury, on January 2, 2019. (Ex. A, Roche Decl. at ¶2; Jt. Stmt. ¶¶1-2.) The next morning, Human Resources Coordinator Katie Roche (then Katie Hernandez) met with Helminski pursuant to Gentex's onboarding process. (Ex. A, Roche Decl. at ¶¶1-2, Ex. A-1; Jt. Stmt. ¶3.) As part of that process, Roche prepared in advance a folder of onboarding documents for each new hire, including Helminski. (Ex. A, Roche Decl. at ¶3.) This folder contained a copy of Gentex's employee handbook ("**Handbook**") and its corresponding acknowledgment ("**Acknowledgment**"), as

---

[1] Defendants did not request a pre-motion scheduling conference regarding any other procedural issues at this time because such issues should be decided by an arbitrator. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Defendants respectfully reserve the right to raise such issues once the appropriate venue has been determined by the Court.

1

indicated on the checklist Roche used. (*Id.* at ¶3, Ex. A-2.) The onboarding folder also contained a resource guide that listed contact information for Human Resources as well as a link to the Gentex Intranet (referred to as "**Spark**"), where Gentex's Alternative Dispute Resolution Policy ("**ADR Policy**") is made available to all employees. (*Id.* at ¶3, Ex. A-3.) Roche then met with each new hire in a conference room near the Human Resources area to give him or her those onboarding documents, allow an opportunity to review them, and answer any questions the new hire may have. (*Id.* at ¶4.) Roche also witnessed each new hire sign any required documentation, including the Acknowledgment. (*Id.*)

Pursuant to this onboarding process, Roche met with Helminski and provided Helminski a copy of the onboarding folder, including the Handbook and Acknowledgment. (Ex. A, Roche Decl. at ¶¶2-3, 5; Jt. Stmt. ¶4.) Roche witnessed Helminski sign the Acknowledgment on January 3, 2019. (Ex. A, Roche Decl. at ¶5, Ex. A-4.) The Acknowledgment provides:

> I agree to abide by all company policies and regulations as shown in the team member handbook **which I have received and been given the opportunity to read and understand**. . . . I understand that if I feel I have been illegally discriminated against in my employment, my appeal should be submitted in writing to the Director of Human Resources within 14 days of the event causing the claim. I also understand that no request will be accepted later than six months from the event causing the claim. **The complete Alternative Dispute Resolution Policy is available in Human Resources or on the Gentex Intranet**.

(*Id.* at Ex. A-4 (emphasis added).)

The Handbook provides a detailed description of the ADR Policy as follows:

> This policy is intended to provide a fair, quick and cost-effective method of resolving all disputes regarding a Team Member's employment by providing both a peer review and, if necessary, a hearing before and a binding opinion from an impartial arbitrator. This policy does not change the basic at-will employment status with Gentex. It specifically includes, but is not limited to, claims for breach of contract, interference with contract, retaliation of any kind, harassment, or discrimination on the basis of age, sex, sexual orientation, gender, race, national origin, ethnicity, disability or handicap, marital status, veteran status, religion, height, weight, or any other protected status under either state or federal law. This

2

>   policy precludes other legal or administrative action over termination of employment, other than an application for unemployment benefits. The Team Member should file a written request for peer review with the Director of Human Resources within 14 days of the event causing the claim. No request will be accepted later than six months from the event causing the claim. The complete policy is available from Human Resources, management or the Gentex Intranet.

(Ex. B, Martinez Decl. at ¶5, Ex. B-1.) Notably, the Handbook further specifies that the ADR Policy is contractual in nature:

>   This handbook contains the policies and procedures of the Company in outline form and is intended to serve as a reference guide. **This handbook does not confer any contractual right, either express or implied, with the exception of the Confidentiality Policy and Alternative Dispute Resolution Policy, which are binding for the Company and Team Members**.

(*Id.* at Ex. B1 (emphasis added).)

The ADR Policy available on the Gentex Intranet or from Human Resources as of January 3, 2019, details the timelines, procedures, applicable laws, and costs of any arbitration between an employee and Gentex. (Ex. B, Martinez Decl. at ¶5, Ex. B-5.) Further, the ADR Policy states, "Any change to the timelines, notices or procedures must be in writing, dated and signed by the employee and the Human Resource Director or his/her designee."[2] (*Id*. at Ex. B-5.)

In addition to the ADR policy, other policies are referenced and discussed in Gentex's Handbook. As she herself acknowledged, Helminksi read and understood the policies in the Handbook. (Ex. A, Roche Decl. at Ex. A-4) Indeed, Helminski took advantage and accessed several Gentex policies and benefits during her short nine-month tenure. (Ex. B, Martinez Decl. at ¶¶2-3; Jt. Stmt. ¶¶5-6.) For example, the Handbook describes Vacation and Short Term Income Protection, both of which Helminski utilized during her employment with Gentex. (Ex. B, Martinez Decl. at ¶2, Ex. B-1, Ex. B-2; Jt. Stmt. ¶5.) Moreover, pursuant to Gentex's Travel,

---

[2] On January 11, 2019, Gentex revised its ADR Policy; however, Helminski did not sign any acknowledgment of the changes therein. (Ex. B, Martinez Decl. at ¶6, Ex. B-6.)

3

Expense, and Entertainment Policy, Helminski also submitted business expenses for reimbursement. (Ex. B, Martinez Decl. at ¶3; Jt. Stmt. ¶6.) The Travel, Expense, and Entertainment Policy is referenced in the Handbook, and both this policy and a link to the website for submitting expenses for reimbursement are available on the Gentex Intranet. (Ex. B, Martinez Decl. at ¶3, Ex. B-1, Ex. B-3.)

Helminski's employment with Gentex ended on September 30, 2019. (Ex. B, Martinez Decl. at ¶4; Jt. Stmt. ¶7.) Shortly thereafter, Helminski's counsel of record requested, and was provided on October 14, 2019, Helminski's personnel file. (Ex. A, Roche Decl. at ¶5, Ex. A-4; Jt. Stmt. ¶8.) Helminski's personnel file contained her signed Acknowledgment that, as noted above, expressly references the ADR policy: "**The complete Alternative Dispute Resolution Policy is available in Human Resources or on the Gentex Intranet**." (Ex. A, Roche Decl. at ¶5, Ex. A-4 (emphasis added); Jt. Stmt. ¶8.)

## ARGUMENT

Defendants' Motion, which requests this Court to compel arbitration and dismiss Helminski's lawsuit, is governed by Section 4 of the FAA and Federal Rule of Civil Procedure 56.[3] *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 838 (6th Cir. 2021); *see also* Fed. R. Civ. P. 12(d) (noting that certain Rule 12 motions must be treated as Rule 56 motions if they present matters outside the pleadings). The FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under" a written arbitration agreement

---

[3] Alternatively, Section 3 of the FAA states that, where a defendant seeks to compel arbitration of "any issue" pending in an existing federal suit, and the court is "satisfied that the issue involved in such suit . . . is referable to arbitration under" a written agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3.

4

may "petition" a district court for an "order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Rule 56 governs whether the Court must compel arbitration and dismiss the lawsuit as a matter of law. *Boykin*, 3 F.4th at 838.

## I.  Helminski's Agreement To Arbitrate The Claims Asserted In This Lawsuit Should Be Enforced

Helminski's agreement to arbitrate, as manifested by the Acknowledgment, Handbook, and ADR Policy, should be enforced, and this lawsuit dismissed. The FAA "manifest[s] a liberal federal policy favoring arbitration agreements," and is applicable in the employment context. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). When deciding this question, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Courts applying Michigan law have found enforceable arbitration agreements between employers and employees based on arbitration policies contained in employee handbooks where the handbook at issue did not expressly deny being a contract and the employee had notice of the handbook. *Compare Heurtebise v. Reliable Bus. Computers*, 550 N.W.2d 243, 247 (Mich. 1996) (finding no enforceable arbitration agreement where handbook specified that it was not a contract) *with Hicks v. EPI Printers, Inc.*, 702 N.W.2d 883, 887-88 (Mich. Ct. App. 2005) (finding enforceable arbitration agreement where handbook contained arbitration provision and no language stating that its terms were not intended to create contract, and employee signed handbook receipt form); *Guelff v. Mercy Health Servs.*, No. 200040, 1999 WL 33444156, at *2 (Mich. Ct.

5

App. May 25, 1999) (finding enforceable arbitration agreement where employee accessed benefits described in handbook with arbitration provision).

To illustrate, the *Hicks* court found that the handbook and receipt form each constituted an agreement to arbitrate. 702 N.W.2d at 888. The handbook constituted an agreement where it contained no language stating that its terms were not intended to create an enforceable contract. *Id*. at 887. Although the manual indicated that the employees' employment was at-will, and that the employer could change the handbook's terms at any time, the court concluded that the handbook's arbitration provision was an enforceable agreement to arbitrate. *Id*. at 887-88. The signed receipt form in *Hicks* likewise constituted an agreement to arbitrate because it specified the employee's agreement to settle disputes through arbitration, subject to the details in the handbook. *Id*. at 888-89.

Likewise, the *Guelff* court found an agreement to arbitrate where the handbook containing the arbitration provision did not include language stating that it was not a contract. 1999 WL 33444156, at *2. Although the employee never signed any acknowledgment of the handbook, and claimed to have had no knowledge of it, the court concluded that the employee had sufficient notice because the manual was available in the employee's workplace and she availed herself of its benefits provisions on multiple occasions. *Id*. By accessing the benefits provided by the handbook, the employee demonstrably had notice of and assented to its obligations. *Id*. The Sixth Circuit similarly concluded that a dispute resolution policy constituted an agreement to arbitrate, even if the employee never read it, where the employer gave notice of the policy by posting it electronically, mailing it to the employee (even if she claimed not to have received it), and discussing it at a mandatory meeting that she attended. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 455-60 (6th Cir. 2013).

In this case, the Handbook specifies that, although most of its terms do not constitute a contract, the ADR Policy is in fact a binding agreement: "This handbook does not confer any contractual right, either express or implied, with the exception of the Confidentiality Policy and Alternative Dispute Resolution Policy, which are binding for the Company and Team Members." (Ex. B., Martinez Decl. at ¶5, Ex. B-1.)  This carve-out of the ADR Policy, and the specification that it is binding on both Gentex and its employees, provide even greater clarity of the parties' agreement to arbitrate than the mere absence of language disclaiming any contract formation in *Hicks* and *Guelff*.  The ADR Policy further demonstrates its contractual nature.  It states, "Any change to the timelines, notices or procedures must be in writing, dated and signed by the employee and the Human Resource Director or his/her designee" (*id.* at ¶5, Ex. B-5), whereas the handbook in *Hicks* permitted the employer to change its terms at any time and was still found to be a contract.

In addition, Helminski clearly had notice of and agreed to the ADR Policy.  Like the employer in *Tillman*, Gentex provided a hard copy of the Handbook to Helminski which expressly referenced the arbitration requirement, made both the Handbook and ADR Policy available to her online, and provided her with an opportunity to ask about these or any other employee documents during an onboarding meeting.  Roche met with Helminski pursuant to her usual onboarding process on January 3, 2019.  (Ex. A, Roche Decl. at ¶2; Jt. Stmt. ¶3.)  As part of that process, Roche provided Helminski a copy of the Handbook, and met with her to review it and answer any questions she may have had.  (Ex. A, Roche Decl. at ¶¶3-4, Ex. A-2; Jt. Stmt. ¶3.)  Roche also provided a resource guide that listed contact information for Human Resources as well as a link to the Gentex Intranet, where both the Handbook and ADR Policy were also available.  (Ex. A, Roche Decl. at ¶3, Ex. A-3.)

Then, like the employee in *Hicks*, Helminski signed the Acknowledgment, which indicates her agreement "to abide by all company policies and regulations as shown in the team member handbook which I have received and been given the opportunity to read and understand." (Ex. A, Roche Decl. at Ex. A-4.) The Acknowledgment also specifies Helminski's agreement to submit any employment claims in the manner set forth by the Handbook and the explicitly-referenced ADR Policy. (*Id.*)

In addition, like the employee in *Guelff*, Helminski accessed benefits described in the Handbook and on the Gentex Intranet during her employment. For example, the Handbook describes Gentex's Vacation and Short Term Income Protection, both of which Helminski utilized during her employment with Gentex. (Ex. B, Martinez Decl. at ¶2, Ex. B-1, Ex. B-2; Jt. Stmt. ¶5.) In addition, pursuant to Gentex's Travel, Expense, and Entertainment Policy, which is also referenced in the Handbook and available on Gentex's Intranet, Helminski submitted business expenses for reimbursement. (Ex. B, Martinez Decl. at ¶3, Ex. B-3; Jt. Stmt. ¶6.) Helminski's use of such benefits demonstrates that she had notice and was in fact well aware of – and accepted – the terms contained in the Handbook and the policies it references on the Gentex Intranet.

Helminski was again notified of the ADR Policy after her employment with Gentex ended, as her counsel of record requested and received Helminski's personnel file, which contained her signed Acknowledgment that expressly references the ADR policy: "The complete Alternative Dispute Resolution Policy is available in Human Resources or on the Gentex Intranet." (Ex. A., Roche Decl. at ¶5, Ex. A-4.)

Based on the Handbook's specification that the ADR Policy was binding on both Gentex and its employees, Helminski's notice of the Handbook and ADR Policy, her use of benefits described in the Handbook and on the Gentex Intranet, and her execution of the Acknowledgment,

8

it is clear that Helminski agreed to arbitrate the gender discrimination and retaliation claims she has asserted in this lawsuit. Indeed, the ADR Policy "specifically includes, but is not limited to, claims for . . . retaliation of any kind, [and] harassment, or discrimination . . . ." (Ex. B, Martinez Decl. at Ex. B-1, Ex. B-5.)

Notably, Helminski's claims against both Gentex and Brackenbury are subject to mandatory arbitration. The ADR Policy expressly applies to "any and all complaints" arising out of employment or termination of employment. (Ex. B, Martinez Decl. at Ex. B-1, Ex. B-5.) As such, there can be no dispute that Helminski's claim against Brackenbury, which is a claim that arises out of her employment or termination of employment, is subject to Helminski's arbitration agreement. Courts have consistently recognized that supervisors are covered by arbitration agreements. An arbitration agreement between a plaintiff and her employer also governs the plaintiff's claims against her supervisor that parallel those against her employer. *See, e.g., Powell v. Sparrow Hospital*, No. 1:10-CV-206, 2010 WL 2901875, at *4 (W.D. Mich. July 23, 2010) (enforcing employer-employee arbitration agreement and dismissing employee's tort claims against employer and individual defendants); *Foxworth v. Radio One, Inc.*, No. 240131, 2003 WL 22244073, at *2 (Mich. Ct. App. Sept. 30, 2003) (affirming summary disposition of plaintiff's tort claims against employer and individual defendants where enforceable employer-employee arbitration agreement). As such, Helminski's claims against both Gentex and Brackenbury are barred by her agreement to arbitrate, and this lawsuit should be dismissed in its entirety.

## II. Defendants Have Not Waived Their Arbitration Rights

Furthermore, Defendants have not waived their rights under the parties' agreement to arbitrate. Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an

allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). To find that a party waived an agreement to arbitrate, that party must be shown to have done both of the following: (1) "taking actions that are completely inconsistent with any reliance on an arbitration agreement," and (2) "delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010).

Helminski cannot establish either of the required conditions for waiver here. Gentex provided Helminski's personnel file, which included the Acknowledgment, to her counsel of record shortly after Helminski' employment with Gentex ended. (Ex. A, Roche Decl. ¶5, Ex. A-4; Jt. Stmt. ¶8.) Further, Gentex had no reason to assert its arbitration agreement when Helminski filed her administrative charges, as doing so would not have affected the EEOC's jurisdiction or right to sue Gentex on behalf of Helminski and the public, had it chosen to do so (which, of course, it did not). *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 459, 468 (6th Cir. 1999); *Spencer v. XPO Logistics*, No. 17-14084, 2018 WL 6830349, at *3-4 (E.D. Mich. Dec. 28, 2018); *see also McNamara v. Yellow Transp., Inc.*, 570 F.3d 950, 958 (8th Cir. 2009) (employer does not waive arbitration rights by participating in EEOC fact-finding or conciliation processes before first asserting such rights, as doing so would not stop EEOC proceedings); *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 15-16 (1st Cir. 2005) (same).

Notably, Helminski's administrative charges were filed against Gentex, but not Brackenbury (Ex. B, Martinez Decl. ¶4, Ex. B-4), so Brackenbury likewise had no reason to assert his arbitration rights with respect to such proceedings since he was not a party thereto. In fact, the first time Brackenbury received any kind of notice that Helminski was bringing a claim against

10

him was when she filed her complaint with this Court. Brackenbury (and Gentex) timely responded to Helminki's complaint by filing this Motion instead of filing an answer to her complaint.

Indeed, "[a] defendant does not have 'an affirmative obligation to invoke its contractual right to arbitration before a claim was filed against it.'" *Elzemeyer v. MJM Co.*, No. 12-10718, 2012 WL 1715245, at *2 (E.D. Mich. May 15, 2012) (quoting *Gordon v. Dadante*, 294 Fed. Appx. 235, *4 (6th Cir. 2008)); *see also Marie*, 402 F.3d at 17 ("[T]here is no need for the non-complaining party, the employer, to make a 'pre-suit demand for arbitration.'") (quoting *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000)). And after Helminski filed this lawsuit instead of requesting arbitration, Defendants promptly filed their pre-motion conference requests and this Motion before any other pleadings or substantive motions, such that Helminski has suffered no prejudice. Courts have rejected the waiver defense in cases where parties engaged in far more extensive litigation before seeking to arbitrate. *See, e.g., Shy v. Navistar Int'l Corp*, 781 F.3d 820, 827 (6th Cir. 2015) (neither pre-litigation conduct nor failure to raise arbitration in response to third party's motion to intervene constituted waiver of right to arbitrate claims raised third party); *Healthcare Mgmt. Sys., Inc. v. Syntel Ltd.*, 2013 WL 3834043, at *3 (M.D. Tenn. 2013) (non-waiving party "removed the case, filed a motion to dismiss [certain] claims, engaged in discovery, and filed motions, all before moving to stay and compel arbitration.").

Because Defendants neither took any actions that were completely inconsistent with their arbitration rights, nor delayed their assertion thereof such that Helminski incurred actual prejudice, Defendants have not waived their rights under the parties' agreement to arbitrate.

## CONCLUSION

Based on the Handbook's specification that the ADR Policy was binding on both Gentex and its employees, Helminski's notice of the Handbook and ADR Policy, her use of benefits

11

described in the Handbook and on the Gentex Intranet, and her execution of the Acknowledgment, it is clear that Helminski agreed to arbitrate the gender discrimination and retaliation claims she has asserted in this lawsuit. Further, Defendants have not waived their rights under this agreement to arbitrate. For these reasons, Defendants request that the Court grant their Motion to Compel Arbitration and Dismiss Plaintiff's Complaint.

| | |
|---|---|
| Dated:  October 13, 2021 | */s/ Amanda M. Fielder*<br>Amanda M. Fielder (P70180)<br>Allyson R. Terpsma (P78553)<br>WARNER NORCROSS + JUDD LLP<br>150 Ottawa Ave., NW, Ste. 1500<br>Grand Rapids, Michigan 49503<br>616.752.2404<br>afielder@wnj.com<br>aterpsma@wnj.com<br>*Attorneys for Defendant* Gentex Corporation |
| | */s/ Mary L. Tabin (with consent)*<br>Mary L. Tabin (P58910)<br>Matthew M. O'Rourke (P79019)<br>MILLER JOHNSON PLC<br>45 Ottawa Ave., SW, Ste. 1100<br>Grand Rapids, MI 49501-0306<br>616.831.1753<br>tabinm@millerjohnson.com<br>orourkem@millerjohnson.com<br>*Attorneys for Defendant Brian Brackenbury* |

22348508